[No. 59245-4. En Banc. March 4, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH N. RILEY, *Appellant*.

*Nancy L. Talner,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for respondent.

GUY, J. — Joseph Riley was convicted of three counts of computer trespass and four counts of possession of a stolen access device after he used his home computer to obtain long-distance telephone access codes from telephone company computers. We hold that the search warrant used to obtain the physical evidence underlying most of Riley's convictions was invalid, and we therefore reverse those convictions. We affirm the remaining convictions, which are based on evidence independent from the invalid search warrant.

### FACTS

Northwest Telco Corporation (Telco) is a company that provides long-distance telephone service. Telco's customers dial a publicly available general access number, then enter an individualized 6-digit access code and the long-distance number they wish to call. A computer at Telco's central location then places the call and charges it to the account corresponding to the entered 6-digit code.

On January 9, 1990, Cal Edwards, director of engineering at Telco, observed that Telco's general access number was being dialed at regular intervals of approximately 40 seconds. After each dialing, a different 6-digit number was entered, followed by a certain long-distance number. Edwards observed similar activity on January 10, between 10 p.m. and 6 a.m. From his past experience, Edwards recognized this activity as characteristic of that of a "computer hacker" attempting to obtain the individualized 6-digit access codes of Telco's customers. Edwards surmised that the hacker was using a computer and modem to dial Telco's general access number, a randomly selected 6-digit number, and a long-distance number. Then, by recording which 6-digit numbers enabled the

long-distance call to be put through successfully, the hacker was able to obtain the valid individual access codes of Telco's customers. The hacker could then use those codes fraudulently to make long-distance calls that would be charged improperly to Telco's paying customers.

On January 11, Edwards contacted Toni Ames, a U S West security investigator, and requested her assistance in exposing the hacker. In response, Ames established a line trap, which is a device that traces telephone calls to their source. By 3 p.m., Ames had traced the repeated dialing to the home of Joseph Riley in Silverdale, Washington. The dialing continued until 6 a.m. on January 12.

Ames contacted the Kitsap County Prosecutor's office on January 12, 1990, and was directed to Investigator Richard Kitchen. Kitchen filed an affidavit for a search warrant after interviewing both Ames and Edwards. The affidavit stated that hackers program computers to conduct the repeated dialing of random numbers and, after discovering valid codes, often transfer them to notebooks, ledgers, or lists. Because the telephone company's system that processes long-distance calls is a computer "switch", the crime listed in the affidavit was computer trespass. That day, Kitchen obtained a search warrant authorizing the seizure of

> any fruits, instrumentalities and/or evidence of a crime, to-wit: notes, records, lists, ledgers, information stored on hard or floppy discs, personal computers, modems, monitors, speed dialers, touchtone telephones, electronic calculator, electronic notebooks or any electronic recording device.

The warrant did not state the crime of computer trespass, or any other crime.

On January 16, Kitchen arrived at Riley's house with the search warrant. Prior to executing the search, Kitchen informed Riley of his rights, although Riley was not arrested. Kitchen then questioned Riley about the occupancy of the house to ascertain which occupant was responsible for the hacking. According to Kitchen, "[Riley] stated that his children did not have access to the modem and that he was

the one that used the computer and modem." Verbatim Report of Proceedings, at 88. Riley then admitted having attempted to obtain Telco customer access codes. Riley told Kitchen that he had tried to obtain the access codes for 3 days in the past week, but that he was not certain of the specific dates. This was consistent with the telephone company's observation of hacking activity on January 9, 10 and 11. Riley is also reported to have said that had he been successful in discovering valid access codes, he might have used the codes to make personal long-distance telephone calls.

Evidence discovered during the subsequent search included four stolen access codes, a computer program that conducted the rapid repeated dialing and entry of random 6-digit numbers, handwritten notes detailing Riley's hacking activity, and a how-to-hack manual.

Riley was later charged with and convicted of two counts of computer trespass against Telco, one count of computer trespass against another long-distance telephone company, ITT Metromedia, and four counts of possession of a stolen access device. The conditions of Riley's sentence included that he not associate with hackers, communicate with computer bulletin board services, or possess a computer.

Riley appealed, and we accepted certification from the Court of Appeals.

ANALYSIS

I

The Search Warrant

■ We first consider whether the search warrant used to search Riley's home was invalid. The trial court ruled that it was valid, despite the fact that it neither specified what crimes were being investigated nor otherwise limited the scope of the search by reference to particular items to be seized. We disagree. A search warrant that fails to specify the crime under investigation without otherwise limiting the items that may be seized violates the particularity requirement of the Fourth Amendment.

28

The Fourth Amendment mandates that warrants describe with particularity the things to be seized.[1] *State v. Perrone,* 119 Wn.2d 538, 545, 834 P.2d 611 (1992). When the nature of the underlying offense precludes a descriptive itemization, generic classifications such as lists are acceptable. *Perrone,* at 547; *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986). In such cases, the search must be circumscribed by reference to the crime under investigation; otherwise, the warrant will fail for lack of particularity. *Spilotro,* at 964. For example, in *United States v. Cardwell,* 680 F.2d 75, 77-78 (9th Cir. 1982), the court declared overbroad and invalid a warrant allowing seizure of any items that were the "fruits, instrumentalities and evidence" of violations of the general tax evasion statute. In *Center Art Galleries — Hawaii, Inc. v. United States,* 875 F.2d 747, 750 (9th Cir. 1989), a warrant authorizing the seizure of evidence of violations of federal criminal law that did not describe the specific crimes being investigated was declared illegal. In *Spilotro,* the court struck down as overbroad a warrant that permitted the seizure of evidence of a violation of any one of 13 federal statutes.

In the present case, the warrant used to search Riley's home permitted the seizure of broad categories of material and was not limited by reference to any specific criminal activity. We therefore hold that the warrant was overbroad and invalid.

The State contends that the warrant is valid because the executing officer, Investigator Kitchen, had personal knowledge of the crime being investigated. It is true that the executing officer's personal knowledge of the place to be searched may "cure" minor, technical defects in the warrant's place description. 2 W. LaFave, *Search and Seizure* § 4.5(a), at 209-10 (2d ed. 1987). For example, the officer's knowledge of the place to be searched will excuse the transposition of address numbers. *State v. Smith,* 39 Wn. App.

---

[1] The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized." (Italics ours.) U.S. Const. amend. 4.

642, 648-49, 694 P.2d 660 (1984), *review denied*, 103 Wn.2d 1034 (1985). However, where the inadequacy arises not in the warrant's description of the place to be searched but rather in the things to be seized, the officer's personal knowledge of the crime may not cure the defect. *See generally* 2 W. LaFave §§ 4.5-4.6 (discussing the particularity requirement in relation to a warrant's description of the places to be searched and the things to be seized). This is so because the purpose of a warrant is not only to limit the executing officer's discretion, but to inform the person subject to the search what items the officer may seize. *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986).

For the same reason, the State's assertion that the search was not executed overbroadly is irrelevant. Because the person whose home is searched has the right to know what items may be seized, an overbroad warrant is invalid whether or not the executing officer abused his discretion. *See In re Lafayette Academy, Inc.*, 610 F.2d 1, 5 (1st Cir. 1979).

The State also contends that the warrant's overbreadth is cured because the affidavit limited the search to evidence of the particular crime of computer trespass. However, an affidavit may only cure an overbroad warrant where the affidavit and the search warrant are physically attached, and the warrant expressly refers to the affidavit and incorporates it with "suitable words of reference". *Bloom v. State*, 283 So. 2d 134, 136 (Fla. Dist. Ct. App. 1973). *See generally* 2 W. LaFave § 4.6(a), at 241 (discussing question whether description in affidavit can save defective description in warrant). If the affidavit is not attached to the warrant and expressly incorporated therein, it may not cure generalities in the warrant even if some of the executing officers have copies of the affidavit. *Center Art Galleries*, at 750; *Spilotro*, at 967; *State v. Kelley*, 52 Wn. App. 581, 762 P.2d 20 (1988) (search of buildings listed in affidavit but not warrant held impermissible because affidavit was not attached and not expressly incorporated); *United States v. Strand*, 761 F.2d 449, 453-54 (8th Cir. 1985) (affidavit attached to warrant could not cure

warrant's lack of particularity because of improper words of incorporation).

The affidavit for the Riley warrant was not attached to the search warrant or incorporated in the warrant by reference. Therefore, although the affidavit mentioned "computer trespass" as the crime under investigation, it cannot validate the overbroad warrant.

■ The State further argues that even if the warrant's defects are not cured by the executing officer's personal knowledge of the crime, the "good faith" exception to the exclusionary rule applies, rendering the fruits of the search admissible at trial. We reject this argument. This court has neither accepted nor rejected the good faith exception under the Washington State Constitution. *State v. Canady*, 116 Wn.2d 853, 857-58, 809 P.2d 203 (1991). *See also State v. Crawley*, 61 Wn. App. 29, 35, 808 P.2d 773, *review denied*, 117 Wn.2d 1009 (1991); *State v. Kelley*, 52 Wn. App. 581, 587 n.2, 762 P.2d 20 (1988). The State did not raise the good faith issue prior to appeal. We will not consider adopting the exception when the issue has not been briefed or argued below. *Canady*, at 857.

■ We hold that the search warrant relied upon to search Riley's home is invalid. Therefore the primary fruits of the search must be suppressed. Because Riley's convictions of four counts of possession of stolen property and one count of computer trespass against ITT Metromedia are supported solely by physical evidence obtained from the search, we reverse those convictions.

## II
### Riley's Confessions

We next consider Riley's convictions of two counts of computer trespass against Telco. We affirm the convictions.

As a preliminary matter, we consider Riley's argument that these convictions, like his others, must be reversed because they are based upon evidence obtained by use of the illegal search warrant. That evidence includes a number of incriminating statements Riley made to Investigator Kitchen

to the effect that Riley had on three separate days dialed Telco's general access number using his computer and modem in an attempt to obtain customer calling card codes. The State contends the computer trespass convictions can be sustained because the incriminating statements were made independently of the execution of the warrant.

Riley raises his Fourth Amendment argument against the admission of the incriminating statements for the first time on appeal.[2] Arguments not raised in the trial court generally will not be considered on appeal. *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 427, 841 P.2d 1244 (1992). Moreover, although RAP 2.5(a) permits a party to raise for the first time on appeal a "manifest error affecting a constitutional right", RAP 2.5(a) does not mandate appellate review of a newly raised argument where the facts necessary for its adjudication are not in the record and therefore where the error is not "manifest". Here, the record is unclear as to whether any or all of Riley's incriminating statements were the product of the invalid search warrant. In particular, the record is unclear whether Riley made incriminating statements prior to being told the investigating officer had a search warrant. Because we lack the needed record for review, we decline to consider whether the Fourth Amendment requires exclusion of Riley's incriminating statements. *See Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (incriminating statements that are indirect fruits of an illegal search are inadmissible when they

---

[2]Although an attempt to exclude the confessions appears in the trial record (Clerk's Papers, at 64), it is based on Fifth, rather than Fourth, Amendment grounds. Thus, instead of discussing the "fruits" doctrine, Riley disputed at trial the voluntariness of his statements. However, "[v]oluntariness is a test of the admissibility of a confession under the common-law prohibition of compulsory self-incrimination. . . . It does not affect the issue here, the *Fourth* Amendment question of whether a confession is a 'fruit of the poisonous tree.' " *State v. Byers*, 88 Wn.2d 1, 7, 559 P.2d 1334 (1977). Therefore, Riley's Fifth Amendment argument for the suppression of his confessions does not suffice as a substitute for the requisite Fourth Amendment argument. The record is not sufficiently developed factually for us to consider the issue; thus, we decline to speculate on what occurred.

bear a sufficiently close relationship to the underlying illegality); *Brown v. Illinois*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975) (listing factors to guide determination whether underlying illegality taints incriminating statements); *New York v. Harris*, 495 U.S. 14, 19, 109 L. Ed. 2d 13, 110 S. Ct. 1640 (1990) (attenuation analysis required only where evidence is somehow product of illegal governmental activity); *see generally* Annot., *"Fruit of the Poisonous Tree" Doctrine Excluding Evidence Derived From Information Gained in Illegal Search*, 43 A.L.R.3d 385, 397 (1972) (explaining that "fruits" doctrine applies to confession obtained via an illegal search).

Thus, we shall assume Riley's admission that he had dialed Telco's general access number in an attempt to obtain customer calling card codes was properly admitted against him, despite the invalidity of the search warrant used in the search of Riley's home subsequent to the time he made that admission. A confession alone, however, will not sustain a conviction unless it is corroborated by independent proof sufficient to establish the corpus delicti of the crime. *State v. Ryan*, 103 Wn.2d 165, 178, 691 P.2d 197 (1984); *State v. Cunningham*, 23 Wn. App. 826, 855-56, 598 P.2d 756 (1979). "The independent evidence need not . . . establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof." *State v. Meyer*, 37 Wn.2d 759, 763, 226 P.2d 204 (1951). The evidence need only "support a logical and reasonable deduction" that the crime occurred. *State v. Hamrick*, 19 Wn. App. 417, 419, 576 P.2d 912 (1978).

Here, there are two pieces of evidence to corroborate Riley's admission: Cal Edwards's observation of hacking activity on January 10 and 11, and U S West's tracing of the hacking to Riley's home on January 11. When Riley's admission and the independent corroborating evidence are considered together, there is sufficient evidence to sustain Riley's conviction of the two counts of computer trespass against Telco. We therefore affirm Riley's conviction of these two counts.

## III
### Use of Line Trap

Riley raises an argument against the admission of one of the above pieces of corroborating evidence. In particular, he objects that the line trap placed by U S West, which traced the hacking activity to Riley's home, recorded a "private communication" in violation of RCW 9.73.030(1)(a). Therefore, Riley argues, the information derived from the line trap may not be used in any criminal case against him pursuant to RCW 9.73.050.[3]

We reject Riley's argument. RCW 9.73.030(1)(a) provides in part that

> it shall be unlawful for any . . . corporation . . . to intercept, or record any:
> (a) Private communication transmitted by telephone . . . between two or more individuals . . . by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication[.]

Because RCW 9.73 does not define "private communication", courts must give the term its ordinary and usual meaning. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 189-90, 829 P.2d 1061 (1992); *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979). The ordinary meaning of "communication" is "the act . . . of imparting or transmitting" or "facts or information communicated". *Webster's Third New International Dictionary* 460 (1986).

Here, the "line trap" traced the hacking activity to, and discovered nothing more than, Riley's telephone number. A telephone number, unless it is itself communicated,

---

[3]Although the State asserts that Riley did not properly preserve this issue for appellate review, appellant assigned error to the "warrantless line trap" and alleged a violation of RCW 9.73 at the trial level. Brief of Appellant app. B, at 5. This is sufficient to preserve an issue for appellate review. *See State v. Clark*, 53 Wn. App. 120, 123, 765 P.2d 916 (1988) (an assignment of error, supported by argument and citation to authority, preserves a claimed error for appellate review), *review denied*, 112 Wn.2d 1018 (1989).

does not constitute a "communication". Therefore, discovering Riley's telephone number via a tracer does not implicate RCW 9.73.030(1)(a).

Riley urges that *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) dictates a contrary determination. We disagree. In *Gunwall*, this court held that a pen register records a "private communication" under RCW 9.73. 106 Wn.2d at 69. A pen register is a device that "identif[ies] all local and long distance numbers dialed, whether the call is completed or not." *Gunwall*, at 63. Although a pen register does not intercept spoken words, it does record an exchange of information — the dialing from one telephone number to another. A pen register is thus "comparable in impact to electronic eavesdropping devices in that it . . . may affect other persons and can involve multiple invasions of privacy". *Gunwall*, at 69. In contrast, all that is learned from a tracer is the telephone number of one party, the party dialing. A pen register may therefore be reasonably viewed as recording a "private communication", whereas a tracer may not.

■ Assuming, arguendo, that a telephone number constitutes a "private communication" under RCW 9.73.030, the information obtained from the tracer would still be admissible to corroborate Riley's confessions. RCW 9.73.070 exempts acts performed "in the . . . operations of the common carrier's communications services, facilities, or equipment or incident to the use of such services, facilities or equipment" from the provisions of RCW 9.73. Telephone companies must address hacking during their operation and maintenance. Thus, tracing hacking activity constitutes an act performed in the "operations of the common carrier's communications services".

We hold that RCW 9.73 does not apply because no "private communication" was recorded via a line trap; and that even if RCW 9.73 did apply, U S West had the authority to establish a line trap pursuant to RCW 9.73.070.[4] Therefore, the information obtained from U S West's tracer may be

_____

[4]We express no opinion as to whether RCW 9.73.030(2)(c), the anonymous or repeated telephone call exception to RCW 9.73.030(1)(a), applies to the tracing of hacking activity by a telephone company.

used to corroborate Riley's admission of having committed the crime of computer trespass against Telco.

## IV
### Definition of Computer Trespass

Riley also contends that his convictions of computer trespass against Telco must be reversed because his conduct — repeatedly dialing Telco's general access number and entering random 6-digit numbers in an attempt to discover access codes belonging to others — does not satisfy the statutory definition of computer trespass. We disagree.

RCW 9A.52.110 provides in relevant part that

[a] person is guilty of computer trespass in the first degree if the person, without authorization, intentionally gains access to a computer system or electronic data base of another . . ..

Riley contends the telephone company's long-distance switch is not a "computer" under RCW 9A.52.110. We reject this contention. The trial court explicitly found that the switch is a computer. This finding was based on unrebutted expert testimony. A trial court's findings of fact will not be disturbed on appeal when they are supported by undisputed evidence. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 272, 461 P.2d 538 (1969).

Riley also argues that acts accomplished by simply dialing the telephone are not encompassed within the statutorily defined crime of computer trespass, and are merely the equivalent of placing a telephone call. He contends he is not guilty of computer trespass because he did not enter, read, insert, or copy data from the telephone system's computer switch. Instead, he argues, RCW 9.26A.110, dealing with telephone fraud, is more appropriately applied.

Riley's acts were not equivalent to placing a telephone call. He used his home computer to dial Telco's general access number and enter random 6-digit numbers representing customer access codes every 40 seconds for several hours at a time. Moreover, RCW 9A.52.110 criminalizes the unauthorized, intentional "access" of a computer system. The term "access" is defined under RCW 9A.52.010(6) as "to approach . . . or

otherwise make use of any resources of a computer, directly or by electronic means." Riley's repeated attempts to discover access codes by sequentially entering random 6-digit numbers constitute "approach[ing]" or "otherwise mak[ing] use of any resources of a computer". The switch is a computer. Long-distance calls are processed through the switch. Riley was approaching the switch each time he entered the general access number, followed by a random 6-digit number representing a customer access code, and a destination number. Therefore, Riley's conduct satisfied the statutory definition of "access" and so was properly treated as computer trespass.[5]

## V
## Sentence

Riley challenges three conditions of his sentence: the prohibitions against Riley owning a computer, associating with other computer hackers, and communicating with computer bulletin boards. He argues that these conditions are not directly crime related, in violation of RCW 9.94A.120(5) and RCW 9.94A.030(7), (11). We disagree and hold that all the conditions the trial court imposed are reasonably related to Riley's convictions of two counts of computer trespass against Telco.

Riley was sentenced pursuant to RCW 9.94A.120(5) which provides that a first-time offender may be sentenced to "up to two years of community supervision, which [includes the imposition of] crime-related prohibitions". Under RCW 9.94A.030(11), a crime-related prohibition is defined as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted". The philosophy underlying the "crime-related" provision is that "[p]ersons may be punished for their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced

---

[5]This interpretation of the statute does not criminalize repeated dialing of a busy telephone number because a computer trespass conviction requires an "intent to commit another crime". RCW 9A.52.110(1)(a). It is not disputed that Riley had such an intent.

into doing things which are believed will rehabilitate them." D. Boerner, *Sentencing in Washington* § 4.5, at 4-7 (1985).[6] *See also State v. Barnes*, 117 Wn.2d 701, 709-10, 818 P.2d 1088 (1991); *In re Mota*, 114 Wn.2d 465, 476, 788 P.2d 538 (1990).

 The main concern that arises when reviewing crime-related prohibitions is thus the prevention of coerced rehabilitation. *See generally* D. Boerner § 4.5, at 4-6 through 4-7. Otherwise, the assignment of crime-related prohibitions has "traditionally been left to the discretion of the sentencing judge." *State v. Parramore*, 53 Wn. App. 527, 530, 768 P.2d 530 (1989) (quoting D. Boerner § 4.5, at 4-7). Thus, a sentence will be reversed only if it is "manifestly unreasonable" such that "no reasonable man would take the view adopted by the trial court." *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977).

 Here, proscribing Riley from possessing a computer is clearly permissible under RCW 9.94A.030(7), (11). We find unpersuasive Riley's argument that this portion of his sentence is not crime related because he cannot commit computer trespass without a modem. Allowing Riley to possess a computer would facilitate his commission of computer trespass in the future. Further, given that punishment is a main goal of sentences imposed pursuant to RCW 9.94A.030(7), (11), prohibiting Riley from possessing a computer for the length of his sentence is a reasonable punishment for a self-proclaimed computer hacker.

Prohibiting Riley from associating with other computer hackers is also reasonable. Limitations upon fundamental rights are permissible, provided they are imposed sensitively. *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975). "[The convict's] freedom of association may be restricted if reasonably necessary to accomplish the essential

---

[6]Appellant correctly asserts that the first-time offender option (RCW 9.94A-.120(5)) permits the imposition of rehabilitative sentencing conditions. *See* D. Boerner, *Sentencing in Washington* § 7.1 (1985); *State v. Welty*, 44 Wn. App. 281, 283, 726 P.2d 472, *review denied*, 107 Wn.2d 1002 (1986). However, Riley contests only the crime-related portion of his sentence. The rehabilitation-oriented philosophy of RCW 9.94A.120(5) applies only to the "other conditions" imposed pursuant to subsection (5)(a) through (f), which Riley does not challenge.

38

needs of the state and public order." *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974), *cert. denied*, 419 U.S. 1124 (1975). The prohibition against Riley associating with other computer hackers is punitive and helps prevent Riley from further criminal conduct for the duration of his sentence. It is therefore not an unconstitutional restriction of Riley's freedom of association. The prohibition against Riley communicating with computer bulletin boards is also reasonably crime related as a means of discouraging his communication with other hackers.

We hold that the conditions of Riley's sentence were reasonably related to Riley's convictions of computer trespass. We therefore uphold the trial court's imposition of those conditions.

CONCLUSION

We reverse Riley's convictions for computer trespass against ITT Metromedia and possession of four stolen access devices because those convictions were supported solely by evidence illegally seized from Riley's home. Riley's convictions of two counts of computer trespass against Northwest Telco are independently supportable and are therefore affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, and JOHNSON, JJ., concur.

Reconsideration denied April 2, 1993.