FILED
COURT OF APPEALS
DIVISION II
2014 DEC -2 AM 8:56
STATE OF WASHINGTON
No. 44194-2-II
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| DONALD ISAAC JOHNSON, | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, J. – Donald I. Johnson appeals a community custody condition imposed after he was convicted of two counts of voyeurism and criminal trespass in the first degree.[1] Johnson argues that the trial court abused its discretion by imposing a community custody condition that required him to submit to plethysmograph testing ordered by his community corrections officer (CCO) or therapist. We hold that the trial court did not err in imposing this condition, but we write to clarify that a CCO can order plethysmograph testing only for the purpose of sexual deviancy treatment. In the unpublished portion of this opinion we address the remaining issues and affirm Johnson's convictions, but we remand for resentencing based on other sentencing errors.

FACTS[2]

Following a bench trial, the trial court found Johnson guilty of two counts of voyeurism. The trial court sentenced Johnson to prison and to community custody. One of Johnson's community custody conditions required him to "[s]ubmit to polygraph and/or plethysmograph

_____

[1] Johnson also appeals his convictions and other sentencing conditions and provisions. We address these arguments in the unpublished portion of this opinion.

[2] Facts relevant to the unpublished portion of this opinion are discussed in conjunction with the issues presented there.

testing upon direction of [his] Community Corrections Officer and/or therapist at [his] expense."

Clerk's Papers (CP) at 147.

Johnson challenges this condition on appeal, arguing that the trial court did not have authority to order the plethysmograph testing as a monitoring tool subject only to his CCO's discretion.

## ANALYSIS

We review the imposition of community custody conditions for an abuse of discretion, and reverse only if the decision is manifestly unreasonable or based on untenable grounds. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010); *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). A condition is manifestly unreasonable if it is beyond the court's authority to impose. *See State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003) (striking the condition pertaining to alcohol counseling as unauthorized under applicable statutes). A challenger does not need to demonstrate that the condition has been enforced; a preenforcement challenge is ripe for review. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008).

The Supreme Court has recognized that plethysmograph testing, unlike polygraph testing, does not serve a monitoring purpose. *State v. Riles*, 135 Wn.2d 326, 345, 957 P.2d 655 (1998), *abrogated on other grounds*, *Valencia*, 169 Wn.2d 782. "It is a gauge for determining immediate sexual arousal level in response to various stimuli used as part of a treatment program for sex offenders."[3] *Riles*, 135 Wn.2d at 345.

---

[3] More specifically, plethysmograph testing attempts to measure sexual arousal with an electronic recording device attached to the penis while the subject is shown images of males and females of various ages in various types of sexual activity. *In re Det. of Halgren*, 156 Wn.2d 795, 800 n.1, 132 P.3d 714 (2006).

The trial court has authority to order a defendant to submit to plethysmograph testing only if the court also orders a crime-related treatment regimen for sexual deviancy. *Riles*, 135 Wn.2d at 352. In *Riles*, the sentencing courts required two convicted sex offenders, as conditions of community placement, to "submit to polygraph and plethysmograph testing upon the request of [their] therapist and/or Community Correction Officer." 135 Wn.2d at 333, 337. Because one of the offenders was not ordered to enter into treatment or therapy, the Supreme Court struck the plethysmograph testing provision from his judgment and sentence. *Riles*, 135 Wn.2d at 353. However, because the other offender was required to participate in sexual deviancy treatment as a condition of community custody, the Supreme Court upheld the plethysmograph condition. *Riles*, 135 Wn.2d at 353. "[A] sentencing court may not order plethysmograph testing unless it also requires crime-related treatment for sexual deviancy. . . . [Plethysmograph testing] is only useful within the context of a comprehensive evaluation or treatment process." *Riles*, 135 Wn.2d at 352; *see also State v. Land*, 172 Wn. App. 593, 605-06, 295 P.3d 782 (striking condition requiring defendant to submit to CCO-ordered plethysmograph testing without any accompanying treatment requirement), *review denied*, 177 Wn.2d 1016 (2013).

Here, the sentencing court imposed both sexual deviancy treatment and plethysmograph testing. In *Riles*, the court upheld the same conditions but did not specifically address the circumstances under which a CCO can order plethysmograph testing. *Riles* made it clear, however, that plethysmograph testing can only be used for treatment purposes. We affirm the condition at issue here but write to clarify that the CCO's scope of authority is limited to ordering plethysmograph testing for the purpose of sexual deviancy treatment and not for monitoring purposes.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

While taking a shower, twelve-year-old S.V. saw Johnson looking at her through the bathroom window. Frightened, S.V. left the shower to tell her babysitter, Julie Stanley, who managed the apartment complex where S.V. and her mother lived. Stanley called the police and told S.V. to stay inside. A few minutes later, when S.V. was back in the shower rinsing the soap from her hair, she saw Johnson come up again and try to open the bathroom window. When S.V. screamed, Stanley ran over and saw Johnson trying to pull the window open. Johnson tried to enter S.V.'s apartment through the front door, but it was locked. He then went to the apartment next door.

Marti Melvin, who lived next door to S.V., was home that day with her son. Melvin heard a knock on the door and yelled for the person to come in. She was expecting Stanley for coffee. Johnson opened the door and asked Melvin about S.V. and another girl, but Melvin did not know what he was talking about. Johnson then said, "I'm just going to come in," and entered the apartment. Report of Proceedings (RP) (Oct. 8 & 9, 2012) at 73. He walked through Melvin's apartment, opening cupboards and doors, and looking through closets. Due to confusion, Melvin was not sure what she did next. Melvin testified that she did not mean to invite Johnson into her apartment but added that she never asked him to leave. She explained that he walked out after he did not find anyone. Melvin then asked Johnson why he had been looking at the girl next door in the shower, and Johnson responded that he thought S.V. was 21 years old.

Stanley testified that she saw Johnson going through the apartment, that Melvin appeared shocked and "freaking out," and that Melvin yelled at Johnson to get out of her house. RP (Oct. 8 & 9) at 51. Stanley added that Johnson forced his way through the apartment before he left.

Johnson eventually wandered to a nearby neighborhood, where an officer approached and questioned him. Johnson told the officer that he had been at the apartment complex trying to talk to a girl. Stanley identified Johnson as the man who had been at the bathroom window and the police arrested him.

The State charged Johnson by amended information with two counts of voyeurism and one count of criminal trespass in the first degree. Johnson chose to represent himself and waived his right to a jury. During his bench trial, S.V., Melvin, Stanley, and two police officers testified to the above facts. Johnson did not present any evidence.

The trial court found Johnson guilty as charged and entered written findings of fact and conclusions of law to support his convictions. The court imposed concurrent standard range sentences on all counts.

In this portion of the opinion, we address Johnson's challenges to the sufficiency of the evidence supporting his convictions, the length of his voyeurism sentences, and some additional community custody conditions.

I.    SUFFICIENCY OF THE EVIDENCE: CRIMINAL TRESPASS

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105,

330 P.3d 182 (2014). Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law. *Homan*, 181 Wn.2d at 105-06. "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Homan*, 181 Wn.2d at 106. We review challenges to a trial court's conclusions of law de novo. *Homan*, 181 Wn.2d at 106.

In claiming insufficient evidence, a defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

"A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building." RCW 9A.52.070(1). "Enters unlawfully" and "remains unlawfully" are alternative means of committing criminal trespass. *See State v. Allen*, 127 Wn. App. 125, 131-32, 110 P.3d 849 (2005) (interpreting similar language in the burglary in the second degree statute). A person enters or remains unlawfully when he "is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(5).

The trial court entered the following finding of fact regarding the criminal trespass charge:

> Stanley . . . watched the defendant go next door, to Apartment #3, and knock on the door. Inside Apartment #3 was Marti Melvin. Melvin heard the knock on her door and told the person outside to come in. Melvin regularly had coffee with Stanley and believed that Stanley was knocking on her door. In fact, the defendant was at Melvin's door.
> The defendant then opened Melvin's door and entered the apartment. Melvin did not know the defendant, **and had not invited him into her residence.** After the defendant entered Melvin's apartment, he began asking for S.V. by name.

The defendant moved from room to room inside the [apartment], telling Melvin that he needed to use the bathroom. Melvin followed the defendant through her apartment to ensure that he did not move toward her children. Eventually, the defendant left the apartment, with Melvin following.

Stanley had followed the defendant to Melvin's apartment and also observed him inside. While Stanley was watching the defendant move around Melvin's apartment, she was on the phone with the 911 operator, describing what was happening.

After the defendant left Melvin's apartment, she asked him what he had been doing looking at the girl next door in the shower. Melvin told the defendant that she was an 11 year old kid. The defendant responded that he thought that S.V. was 21 years old.

CP at 107-08 (emphasis added). Johnson challenges the statement highlighted above. He also challenges the highlighted portion of the related conclusion of law:

The defendant knowingly entered or remained in Marti Melvin's apartment. Melvin believed that another person was at her door when she told the defendant to come in after he knocked, having never met the defendant. **The defendant knew that the entry into Melvin's apartment was unlawful, as he knew that he was not licensed, invited, or otherwise privileged to enter or remain in the apartment. . . .** [T]he defendant knew that the entry or remaining was unlawful.

CP at 110 (emphasis added).

Johnson argues that the evidence does not show that he either entered or remained unlawfully in Melvin's apartment. He argues that, to the contrary, Melvin testified that she invited him in and never told him to leave. Johnson adds that Stanley testified that he eventually left after being told to do so.

The State asserts that Melvin invited Johnson in by mistake, thinking that he was her friend arriving for coffee. As Melvin testified, "I don't make a habit of inviting people I don't know in my apartment. The manager comes over for coffee every morning, and I believe that's who I thought it was." RP (Oct. 8 & 9, 2012) at 76. Furthermore, even if Johnson was invited to enter,

he was never invited to look through Melvin's apartment, including opening closets, cupboards, and doors. The fact that he left because he could not find who he was looking for does not undermine the fact that he remained in the apartment unlawfully beforehand. *See Allen*, 127 Wn. App. at 138 (remanding for new trial where evidence supported unlawful remaining means of burglary counts).

As stated, we defer to the trier of fact on issues of conflicting testimony and the credibility of the witnesses. Accordingly, we find substantial evidence to support the finding that Melvin did not invite Johnson to remain in her residence, and this finding is sufficient to support the conclusion that Johnson committed criminal trespass in the first degree.

II.    STATUTORY MAXIMUM SENTENCE

Johnson next contends that the trial court erroneously imposed a sentence beyond the statutory maximum when it ordered him to serve 57 months in confinement on his voyeurism convictions as well as 36 months of community custody.

A court's sentencing authority is limited to that granted by statute. *State v. Skillman*, 60 Wn. App. 837, 838, 809 P.2d 756 (1991). Whether a sentencing court has exceeded its statutory authority is a question of law that we review de novo. *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003).

A trial court cannot impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime. RCW 9.94A.505(5). The statutory maximum term of confinement for voyeurism, a class C felony, is 60 months. RCW 9A.44.115(3); RCW 9A.20.021(1)(c). In recognition of this limitation, the trial court added a notation to Johnson's judgment and sentence stating that the total term of confinement and community custody actually served could not exceed the statutory maximum.

The State concedes that following the enactment of RCW 9.94A.701(9) in 2009, this notation is insufficient. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012). RCW 9.94A.701(9) provides that a community custody term "shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." Instead of leaving the Department of Corrections responsible for reducing the term of community custody so that the total term of confinement is within the statutory maximum, RCW 9.94A.701(9) requires the trial court to reduce the term of community custody when it first imposes sentence to avoid a sentence that exceeds the statutory maximum. *Boyd*, 174 Wn.2d at 473. Consequently, we must remand for resentencing that complies with the statutory requirements.

III.     ADDITIONAL COMMUNITY CUSTODY CONDITIONS

RCW 9.94A.703 sets forth mandatory, waivable, and discretionary community custody conditions. Among the waivable conditions is one authorizing the court to order an offender to refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions. RCW 9.94.703(2)(c). The trial court prohibited Johnson from possessing or consuming controlled substances "without a valid prescription from a licensed physician." CP at 146. Johnson argues that the trial court unlawfully limited him to possessing controlled substances prescribed by licensed physicians. The State concedes that the requirement that the prescription must be from a licensed physician should be stricken. We accept this concession.

Johnson next challenges condition 16:

Do not initiate, <u>or have in any way</u>, physical contact with children under the age of 18 for any reason, unless approved as per #14[4] above. Do not have any contact with physically or mentally vulnerable individuals.

CP at 146 (emphasis in original). Johnson objects to the sentence in condition 16 that prohibits him from contact with physically or mentally vulnerable individuals.

A trial court may order an offender to comply with crime-related prohibitions during a term of community custody. RCW 9.94A.703(3)(f). A "crime-related prohibition" is an order prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted. RCW 9.94A.030(10). In addition to ordering crime-related prohibitions, a court may order an offender to have no contact with victims or a "specified class of individuals." RCW 9.94A.703(3)(b). The specified class must bear some relationship to the crime. *Riles*, 135 Wn.2d at 350. Johnson contends that his crimes did not involve physically or mentally vulnerable individuals and that the prohibition on his contact with such individuals is not authorized under RCW 9.94A.703.

The State responds that because S.V. was a child who was unclothed and alone at the time of the voyeurism, she was both physically and mentally vulnerable. The State contends that condition 16 is therefore related to Johnson's crimes. We question this reasoning and note that conditions 14 and 16 contain separate prohibitions on any contact with minors. We do not see that the additional language prohibiting Johnson from contact with physically or mentally vulnerable individuals was related to his offenses and we order it stricken from condition 16.

---

[4] Condition 14 bars Johnson from contact with minors unless approved in advance by his sexual deviancy treatment provider and CCO.

10

Finally, Johnson challenges conditions 24 and 25:

24. You shall not have access to the Internet at any location nor shall you have access to computers (with the exception of for employment purposes) unless otherwise approved by the CCO. You also are prohibited from joining or perusing any public social websites (Face book, MySpace, etc.) or telephoning any sexually-oriented "900" telephone numbers.

25. Do not possess or peruse any sexually explicit materials in any medium. Your sexual deviancy treatment provider will define sexually explicit material. Do not patronize prostitutes or establishments that promote the commercialization of sex. Also, do not possess or use any cell phone that may provide access to the Internet as well.

CP at 147. Johnson argues that these conditions are not crime related, and the State agrees. We accept the State's concession of error and order these conditions stricken from the judgment and sentence.

IV. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Johnson argues in his pro se SAG that the evidence was insufficient to support his convictions. He complains in particular about the absence of physical evidence. Johnson does not identify any particular elements for which sufficient evidence is lacking.

As set forth above, a challenge to the sufficiency of the evidence admits the truth of the State's evidence, and we must consider the evidence and all reasonable inferences from it in the light most favorable to the State. Circumstantial and direct evidence are equally reliable.

The testimony was more than sufficient to support Johnson's convictions for voyeurism, which required proof that he knowingly viewed another person in a place where that person would have a reasonable expectation of privacy, for the purpose of arousing or gratifying his sexual desire. RCW 9A.44.115(2)(a). As the trial court concluded, Johnson's statement that he thought S.V. was 21 years old showed that he watched her shower for the purpose of sexual arousal or gratification. *See State v. Diaz-Flores*, 148 Wn. App. 911, 919, 201 P.3d 1073 (2009). We have already found the evidence sufficient to support Johnson's criminal trespass conviction. The

11

absence of physical evidence is irrelevant because there was ample testimony to support Johnson's convictions.

Accordingly, we affirm Johnson's convictions and remand for resentencing in accordance with this opinion.

_____
Melnick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.

12