FILED
COURT OF APPEALS
DIVISION II

2014 DEC -9 AM 10: 31

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44674-0-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| JAMES BERNARDE, | |
| Appellant. | |

MAXA, J. — James Bernarde appeals from an order revoking his special sex offender sentencing alternative (SSOSA) imposed following his 2003 guilty pleas to seven counts of second degree child molestation. He argues that the trial court abused its discretion in terminating his SSOSA, that it improperly delegated the term of his community custody to the Department of Corrections (DOC), and that it acted without authority in imposing community custody conditions relating to prescription medications (condition 13), pornographic materials (condition 15), and plethysmograph testing (condition 19).[1]

We hold that the trial court (1) did not abuse its discretion in terminating Bernarde's SSOSA, (2) erred in not setting a term of community custody, (3) erred in imposing the community custody conditions relating to prescription medications and pornographic materials,

---

[1] In a statement of additional grounds, Bernarde claims that the trial court abused its discretion when it revoked his SSOSA and improperly delegated his term of community custody. Because these are the same issues appellate counsel raises, we do not address them separately.

and (4) did not err in imposing the community custody condition relating to plethysmograph testing, with the clarification that such testing can be ordered only for treatment purposes. Accordingly, we affirm the trial court's termination of Bernarde's SSOSA and the imposition of condition 19, but remand for the trial court to set a term of community custody, strike a portion of community custody condition 13, and strike community custody condition 15.

## FACTS

On October 10, 2003, Bernarde pleaded guilty to seven counts of child molestation in the second degree. The trial court imposed 116 month sentences and suspended all but 180 days conditioned on Bernarde's successful completion of a SSOSA. The trial court ordered that Bernarde "[u]ndergo and successfully complete an outpatient . . . sex offender treatment program . . . for a period of 3 years or successful completion." Clerk's Papers (CP) at 46. The judgment and sentence also included a revocation clause:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence, with credit for any confinement served during the period of community custody, if the defendant violates the conditions of the suspended sentence or the court finds that the defendant is failing to make satisfactory progress in treatment.

CP at 46.

Bernarde successfully completed treatment in July 2009. In 2010, the trial court entered a written order stating that Bernarde had completed his SSOSA required treatment and recommended but did not require aftercare treatment. But in May 2012, Bernarde's Community Corrections Officer (CCO) directed Bernarde to resume sex offender treatment after Bernarde had failed to report having shaken hands in church with a 12-year-old boy. In September 2012, the trial court ordered Bernarde to continue with treatment.

On January 30, 2013, Bernarde was arrested for assaulting his wife. Because a no-contact order prohibited Bernarde from contacting his wife, he moved into a local motel. Bernarde did not contact his CCO within 24 hours of his release from jail nor did he report his address change. After his release from jail, Bernarde went to his residence to gather some personal items and spoke with his wife while there. He also gave her a ride home after she had come to the motel to visit him. A few weeks later, Bernarde's treatment provider terminated Bernarde from sex offender treatment because he was no longer amenable to treatment in the community.

In March 2013, Bernarde disclosed to his polygraph examiner that he had had unreported contact with children. The first incident was when he was checking into the motel and a family came into the lobby. The second was when Bernarde was doing electrical work at a family residence and the owner's children came home after school. Based on these incidents, the State petitioned the trial court to revoke Bernarde's SSOSA.

In March 2013, the trial court held a revocation hearing. At that hearing, Bernarde's CCO testified:

> His behavior since release--since completing treatment has regressed to pre-treatment behavior. His thought processes, his self involvement and his entitlement are prime examples of a pre-treatment sex offender where self gratification becomes primary and he becomes his own self focus, which is contrary to the treatment that he--the tools that he was taught in treatment.
>
> He disregards directives from the Department of Corrections. He's disregarded directives from treatment providers and from the Court.
>
> He has been ordered, because of his behavior and thought processes, back to treatment by this Court and both treatment providers have validated that thought, the opinion that he is pre-treatment in his thought pattern, and due to his own behavior has been terminated from those treatment providers.

Report of Proceedings (Mar. 22, 2013) at 77-78.

3

The trial court revoked Bernarde's SSOSA based on six violations of the terms of his community custody: (1) failing to report a change of address within 24 hours of moving, (2) failing to obey all laws by violating a no-contact order, (3) being terminated from sex offender treatment, (4) failing to obey all laws by assaulting his wife, (5) failing to report to DOC within 24 hours of release from custody, and (6) failing to report having unauthorized contact with minors between March 1 and March 15, 2013. Bernarde stipulated to the first three of these violations. The trial court found the latter three following an evidentiary hearing and entered an order revoking Bernarde's SSOSA.

The order revoking Bernarde's SSOSA committed him to 116 months of incarceration with credit for 206 days served, and included the following community custody provision:

> The Defendant is additionally sentenced to a term of community custody for that period of time that equals the difference between 120 months and the period of time spent in total confinement less credit time served and good time; see Appendix F attached hereto and incorporated by reference.

CP at 343. The trial court also imposed various community custody conditions.

Bernarde appeals the revocation of his SSOSA and his sentence.

ANALYSIS

A.   ORDER TERMINATING SSOSA

Former RCW 9.94A.670 (2002) granted the trial court authority to impose a SSOSA with discretionary conditions. Former RCW 9.94A.670(5)-(6). The trial court also had discretion to revoke the SSOSA:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment. All confinement time served

4

during the period of community custody shall be credited to the offender if the suspended sentence is revoked.

RCW 9.94A.670(11). We review a trial court's decision revoking a SSOSA for an abuse of discretion. *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Id.* at 706.

Bernarde argues that because he successfully completed sex offender treatment in 2009, the trial court could not rely on the lack of satisfactory progress in treatment as a basis for revocation. However, he never challenged the trial court's 2012 order requiring him to resume treatment after he had failed to report two incidents of contact with minor children. At the time of Bernarde's revocation hearing, treatment was a condition of his suspended sentence, and he was terminated after he assaulted his wife. The trial court did not revoke the SSOSA because Bernarde was "failing to make satisfactory progress in treatment." RCW 9.94A.670(11). Instead, the trial court found that Bernarde "was terminated from court ordered sex offender treatment." CP 343.

Even if we accepted Bernarde's argument that the trial court could not rely on his failed treatment in revoking his SSOSA, the failed treatment was not the only basis for revocation. The five additional violations are sufficient to support the trial court's decision, in the exercise of its discretion, to revoke his suspended sentence.

In his statement of additional grounds, Bernarde relies on *State v. Miller*, 159 Wn. App. 911, 247 P.3d 457 (2011) to argue that his violations were not as serious as Miller's and therefore the trial court here abused its discretion. But Bernarde's burden is to show that the trial

44674-0-II

court had untenable reasons or grounds for revocation. He fails to do so. The trial court found six violations of his community custody, including his failure to disclose contact with minors and assaulting his wife. Those violations provide a sufficient basis for revoking his SSOSA.

We hold that the trial court did not abuse its discretion in revoking Bernarde's SSOSA. Accordingly, we affirm that revocation.

B.     TERM OF COMMUNITY CUSTODY

Bernarde argues that the trial court imposed an illegal sentence because his sentence combined with his term of community custody violates the statutory maximum allowed. We agree.

Under RCW 9.94A.505(5), a sentencing court may not impose a sentence in which the terms of confinement and community custody combined exceed the statutory maximum sentence for the crime. The statutory maximum for Bernarde's offenses, which are class B felonies, is 120 months. RCW 9A.44.086; RCW 9A.20.021(1)(b). The order revoking Bernarde's SSOSA provided:

> The Defendant is additionally sentenced to a term of community custody for that period of time that equals the difference between 120 months and the period of time spent in total confinement less credit time served and good time; see Appendix F attached hereto and incorporated by reference.

CP at 343. In other words, the trial court allowed the DOC to determine Bernarde's community custody term.

Bernarde argues, and the State concedes, that the trial court's notation, approved in *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009), is no longer valid. In 2009, the legislature enacted legislation providing that the community custody term "shall be reduced

6

*by the court* whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." RCW 9.94A.701(9) (emphasis added). Because Bernarde was sentenced after this statute became effective, the trial court was required to reduce his term of community custody to avoid a sentence in excess of the statutory maximum instead of delegating this task to the DOC. *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). On remand, the trial court must correct this error.

C.    COMMUNITY CUSTODY CONDITIONS

Former RCW 9.94A.700 (2003) authorized a trial court to impose conditions during community custody. If the trial court has statutory authority to impose a sentencing condition, we review the trial court's imposition of the condition for an abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993).

1.    Lawfully Issued Prescriptions

Condition 13 provides: "You shall not possess or consume any mind or mood altering substances, to include alcohol, or any controlled substances *without a valid prescription from a licensed physician.*" CP at 58 (emphasis added). Bernarde argues that the prohibition of any controlled substance use without a valid prescription from a "licensed physician" exceeded the trial court's statutory authority. We agree.

Former RCW 9.94A.700(3)(c) (2003) allows the trial court to limit an offender's use of controlled substances to those with "lawfully issued prescriptions." Condition 13 is too restrictive because other health care providers besides "licensed physicians" can lawfully issue prescriptions. *See* RCW 69.41.030. The State concedes that condition 13 exceeds the trial court's authority and that it should be limited only to lawfully issued prescriptions. We accept

7

this concession. We remand for the trial court to strike the language "from a licensed physician" from this condition. CP at 58.

2. Pornographic Materials

Condition 15 provides: "Do not possess or peruse pornographic materials. *Your community corrections officer will define pornographic material.*" CP at 58 (emphasis added). Bernarde claims that the prohibition on viewing pornographic materials exceeded the trial court's authority and violated his first amendment and due process rights. We agree.

In *State v. Bahl*, 164 Wn.2d 739, 193 P.3d 678 (2008), the trial court imposed the following community custody condition: "Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer." *Id.* at 743. Noting that "pornography" lacks a precise legal definition, the court in *Bahl* concluded:

> [T]he restriction on accessing or possessing pornographic materials is unconstitutionally vague. The fact that the condition provides that Bahl's community corrections officer can direct what falls within the condition only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement.

*Id.* at 758. The community custody condition at issue here is deficient for the same reasons.

The State responds that the trial court ordered Bernarde to undergo sexual deviancy treatment and left the definition of "pornographic" to the treatment provider. But we find no such provision in the community custody conditions and certainly not in the challenged condition 15. Nor does the State cite any authority to support its contention that the treatment provider can define pornography.

8

Condition 15 is unconstitutionally vague. We remand for the trial court to strike this condition.[2]

3. Plethysmograph Testing

Condition 19 provides: "Submit to polygraph and plethysmograph testing *upon direction of your community corrections officer* or therapist at your expense." CP at 58 (emphasis added). Bernarde claims that requiring plethysmograph testing violates his right to be free from governmental intrusion into his private affairs. We hold that this condition is proper, with the clarification that the CCO can order plethysmograph testing only for the purpose of sexual deviancy treatment.

Former RCW 9.94A.505(9) (2002) states that an offender is required to participate in crime-related treatment or counseling services. Requiring plethysmograph testing incident to crime-related treatment is a valid community custody condition that the trial court is authorized to impose under former RCW 9.94A.505(9). *State v. Riles*, 135 Wn.2d 326, 345-46, 957 P.3d 655 (1998), *abrogated on other grounds*, *State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010); *State v. Land*, 172 Wn. App. 593, 605-06, 295 P.3d 782, *review denied*, 177 Wn.2d 1016 (2013). However, using plethysmograph testing as a monitoring tool is improper. *Riles*, 135 Wn.2d at 345. The issue is whether a condition can authorize the CCO to require plethysmograph testing for purposes other than treatment.

---

[2] We do not hold that the sexual deviancy provider cannot limit Bernarde's use of sexually explicit materials. We merely hold that the condition allowing the CCO to define pornography is unconstitutionally vague.

We recently addressed this issue in *State v. Johnson*, No. 44194-2, 2014 WL 6778299 (Wash. Ct. App. Dec. 2, 2014). We held that a community custody provision allowing a CCO to order plethysmograph testing is proper, but the CCO's scope of authority is limited to ordering such testing only for purposes of sexual deviancy treatment and not for monitoring. *Johnson*, WL 6778299, at *2. Accordingly, we affirm the trial court's imposition of condition 19, with the clarification that the CCO has authority to order plethysmograph testing only for purposes of sexual deviancy treatment. We also direct the State to provide a copy of this portion of the opinion to DOC and the CCO.

We affirm the trial court's termination of Bernarde's SSOSA and imposition of condition 19, but remand for the trial court to set a term of community custody, strike a portion of community custody condition 13, and strike community custody condition 15.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.

10