IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35079-7-III (consolidated |
| Respondent, | ) | with 35080-1-III) |
| | ) | |
| v. | ) | |
| | ) | |
| DOMINIC LUIS CUDMORE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

FEARING, J. — The trial court, after a bench trial, convicted Dominic Cudmore

with second degree possession of stolen property, second degree identity theft, and first

degree trafficking in stolen property. The trial court also convicted Cudmore of two

counts of trafficking of stolen property in the first degree under case No. 35080-1-III. On

appeal, Cudmore only challenges his sentence. He contends the trial court erroneously

calculated his offender score when refusing to deem the convictions for possession of

stolen property and identity theft as the same criminal misconduct. He also posits that the

trial court mistakenly imposed a community custody condition that he refrain from

association with known drug offenders. We affirm the trial court.

FACTS

On a spring day in 2013, Brittani Urann returned from softball practice, at Saint

Michael's Academy, to discover her Wells Fargo debit card missing from her locker.

During the practice, at least twenty bags from the girls' locker room at the academy went

missing. Two hours after Urann noticed the missing card, an individual attempted to

purchase Coors Light from a Zip Trip using Urann's debit card, and the store clerk

declined the transaction. Law enforcement reviewed surveillance footage, which

revealed the card user to be Dominic Cudmore.

PROCEDURE

The State of Washington charged Dominic Cudmore with first degree theft other

than a firearm, second degree possession of stolen property, identity theft in the second

degree, and trafficking in stolen property in the first degree. Months later Cudmore

signed a drug court waiver and agreement. The State dropped Cudmore's first degree

theft charge, and Cudmore entered an agreement with the State on the remaining three

counts. Pursuant to the agreement, the State conditionally released Cudmore so long as

he abstained from drug and alcohol use, among other conditions.

Four months later, Dominic Cudmore agreed to remove his case from drug court

to mental health court. Cudmore nonetheless struggled to comply with the terms of his

agreement while his case remained in mental health court. Cudmore did not attend court

hearings, missed mental health counseling appointments, and incurred positive urinalysis

and breath analysis tests. The trial court terminated Cudmore's mental health court

agreement.

2

After trial, the trial court convicted Dominic Cudmore of second degree possession of stolen property, identity theft in the second degree, and trafficking in stolen property in the first degree. Before sentencing, Cudmore stipulated to his prior criminal history apart from the current convictions.

At sentencing, Dominic Cudmore argued he deserved an offender score of eight instead of nine because the identity theft and possession of stolen property charges constituted the same criminal conduct. Cudmore emphasized that each crime involved possession of the debit card at the same time and place. In response, the State distinguished between the two crimes. According to the State, Cudmore completed the crime of possession of stolen property when he first held Brittani Urann's debit card. Cudmore would be guilty of this first crime regardless of whether he attempted to purchase any goods with the card. Cudmore committed the crime of identity theft only when he later entered the convenience store and attempted to purchase the beer. By attempting to charge the purchase to the card, Cudmore falsely represented himself as Urann.

The trial court determined each charge did not constitute the same criminal conduct and sentenced Dominic Cudmore based on an offender score of nine. Dominic Cudmore's sentencing court determined that Dominic Cudmore has a chemical dependency that contributed to his offenses. Cudmore received community custody

conditions as part of his sentence, which conditions included the prohibition: "No contact with DOC ID'd drug offenders except in treatment setting." Clerk's Papers at 41.

## LAW AND ANALYSIS

### Same Criminal Conduct

On appeal, Dominic Cudmore challenges two features of his sentence: the offender score and a community custody condition. We review a trial court's determination of what constitutes the same criminal conduct, for purposes of calculating the offender score, for abuse of discretion or a misapplication of the law. *State v. Aldana Graciano*, 176 Wn.2d 531, 536-37, 295 P.3d 219 (2013); *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011). A trial court abuses its discretion if it renders a manifestly unreasonable decision based on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

"Same criminal conduct" means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a). The absence of any one of these prongs prevents a finding of same criminal conduct. *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994).

In the context of "same criminal conduct," "intent" is not the mens rea required for the crime, but rather, it means the defendant's "'objective criminal purpose in committing the crime.'" *State v. Davis*, 174 Wn. App. 623, 642, 300 P.3d 465 (2013) (quoting *State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990)). "[I]n construing

4

the 'same criminal intent' prong, the standard is the extent to which the criminal intent,

objectively viewed, changed from one crime to the next." *State v. Vike*, 125 Wn.2d at

411.

Dominic Cudmore's criminal intent differed when he attempted to use the debit

card as opposed to when he merely possessed the card. RCW 9A.56.140(1), the

possession of stolen property statute, defines the crime as:

> "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

The identify theft statute, RCW 9.35.020(1) reads:

> No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

We agree with the trial court that the possession of stolen property charge and the

identity theft charge are distinct crimes. Dominic Cudmore possessed stolen property

when he first acquired the debit card with the intent to withhold it from Britanni Urann.

The identity theft occurred at a later time when he approached the convenience store

counter with the alcohol. Cudmore's intent differed when he committed identity theft

because he intended to commit theft at the Zip Trip. The crime of identity theft also

gained the added victim of the convenience store.

5

Community Custody Condition

A court reviews community custody conditions for an abuse of discretion and will reverse them only if they are "manifestly unreasonable." *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). Dominic Cudmore challenges his community custody condition prohibiting contact with Department of Corrections identified drug offenders except in a treatment setting. He contends the condition infringes his freedom to associate and is vague.

The due process vagueness doctrine under the Fourteenth Amendment to the Unites States Constitution and article I, section 3 of the Washington State Constitution "requires that citizens have fair warning of proscribed conduct." *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). The doctrine assures that ordinary people can discern the prohibited conduct and gain protection against arbitrary enforcement of the laws. *State v. Valencia*, 169 Wn.2d at 791; *State v. Bahl*, 164 Wn.2d at 752. If persons of ordinary intelligence can understand what the law proscribes, notwithstanding some possible areas of disagreement, the law is sufficiently definite. *State v. Bahl*, 164 Wn.2d at 754; *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).

Limitations on fundamental rights are permissible, provided they are imposed sensitively. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). An offender's freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. *State v. Riley*, 121 Wn.2d at 37-38.

6

In *State v. Hearn*, 131 Wn. App. 601, 128 P.3d 139 (2006), Tami Hearn argued that a community custody condition demanding that she refrain from associating with known drug offenders violated her freedom to associate. The jury had convicted Hearn of drug possession at the trial court level. This court affirmed Hearn's community custody condition, noting "[r]ecurring illegal drug use is a problem that logically can be discouraged by limiting contact with other known drug offenders." *State v. Hearn*, 131 Wn. App. at 609.

Dominic Cudmore's sentencing court found that Dominic Cudmore suffered from a chemical dependency that contributed to his offenses. Cudmore exhibited a dependency disorder when he breached the terms of his drug court agreement. Therefore, as in *Hearn*, the court reasonably imposed a prohibition from associating with Department of Corrections identified offenders, outside of treatment settings. This condition aids Cudmore in remaining sober. Discouraging further criminal conduct is a goal of community placement. *State v. Riley*, 121 Wn.2d at 38.

An individual of ordinary intelligence can plainly understand the association with drug offender's condition prohibits Cudmore from associating with individuals the Department of Corrections labels as offenders. The offender can readily gain a list of those offenders. The trial court did not abuse its discretion in imposing this condition.

No. 35079-7-III (cons. w/35080-1-III)
*State v. Cudmore*

CONCLUSION

We affirm Dominic Cudmore's sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

8