IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 38697-0-III |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| JUAN LUNA HUEZO, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, A.C.J. — Juan Luna Huezo seeks relief from personal restraint stemming from his 2018 convictions for one count of rape of a child in the first degree and two counts of child molestation in the first degree. In this timely petition, Mr. Luna Huezo argues his convictions should be reversed because improper witness opinions denied him his right to a jury trial and because the trial court erred by admitting hearsay. Also, he challenges eight community custody conditions. To the extent Mr. Luna Huezo seeks a new trial, we deny his petition. But to the extent he seeks relief from some community custody condition, we grant partial relief.

No. 38697-0-III
*In re Pers. Restraint of Huezo*

FACTS

Mr. Luna Huezo was the stepfather of two minor girls, T.O.,[1] born in April 2005, and B.O., born in July 2006. *State v. Luna Huezo*, No. 36001-6-III, slip op. at 1 (Wash. Ct. App. Dec. 1, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/360016_unp.pdf. He is more than two decades older than the girls. He began sexually abusing T.O. when she was nine years old and B.O. when she was eight years old.

In 2017, T.O.'s friends saw her crying during class and, after speaking with her, reported their concerns to their teacher. T.O. and B.O. spoke with a school counselor and disclosed the sexual abuse. The counselor contacted the Kennewick Police Department and, the same day, Mauri Murstig, a forensic child interviewer at the Sexual Advocacy Response Center, interviewed both girls. T.O. described multiple instances of sexual abuse by Mr. Luna Huezo and details about specific items he used during the abuse— including duct tape, condoms, oil, and baby wipes, and the location of those items.

_____

[1] To protect the privacy interests of the child victims, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

She also disclosed that Mr. Luna Huezo showed her pornographic videos using his cell phone and asked her to smile like the women in those videos.

Later that evening, the police obtained and executed a search warrant at the girls' home and their aunt's residence where they found condoms, oil, duct tape, zip ties, baby wipes, and a zebra blanket. Approximately two weeks later, Dr. Shannon Phipps, a family practice physician, conducted a sexual assault examination of T.O.

*Procedure*

The State charged Mr. Luna Huezo with one count of rape of a child in the first degree relating to T.O. and three counts of child molestation in the first degree, with one count relating to T.O. and two counts relating to B.O. The one count of rape of a child in the first degree and the first count of child molestation in the first degree alleged aggravating circumstances of an ongoing pattern of sexual abuse and breach of a position of trust. The second count of child molestation in the first degree alleged the aggravating circumstance of violation of a position of trust.

B.O. testified at trial. Her answers were generally nonresponsive or vague regarding Mr. Luna Huezo's sexual acts with her, but she indicated he touched her "private part" under her clothes, with his hand. Rep. of Proc. (No. 36001-6) (RP) at 229-30. B.O. also testified she saw him touch T.O.'s "private part" underneath her

3

clothes. RP at 236. B.O. stated she heard T.O. crying when Mr. Luna Huezo had T.O. in the bedroom with him.

T.O. also testified at trial. She testified about several instances in which Mr. Luna Huezo molested or penetrated her, including instances when he moved his fingers "in" her vagina and it hurt a little and one instance where he had her kneel and put her mouth "on" his penis while he was standing. RP at 254, 265.

T.O. testified Mr. Luna Huezo duct taped her hands together behind her back during one incident. She testified he would remove a condom from a "gray and blue" backpack he kept in the bathroom and put it on his "private part." RP at 263, 262. She said he would also "rub [oil] over his private part" and, after he finished, he always cleaned himself with a baby wipe and would throw it in the garbage. RP at 265. T.O. testified that when she asked him if he was doing the same thing to B.O., he replied yes.

Dr. Phipps testified about her examination of T.O. She is a family practice physician with Kadlec Clinics. At that time, she had been performing sexual assault examinations on young people for more than one year and had conducted approximately 10 to 12 examinations. She conducted the examinations at the request of law enforcement or the prosecutor's office. The State questioned Dr. Phipps about her examination of T.O.:

4

Q    And did you ask [T.O.] why she—for her medical history?

A    I did.

Q    And what did she tell you?

[DEFENSE COUNSEL]:   Your Honor, I'm going to object to any hearsay evidence.

[PROSECUTOR]:   Your Honor, this is pursuant to the medical hearsay exception.

THE COURT:      I'll overrule.

. . . .

Q    Okay. So how did you continue your—or the exam with her?

A    Well, I—after having asked the questions to make her comfortable, I asked her if she knew that she was to see me because law enforcement had asked her to come in. And she said she was. I then rephrased the question and I asked her if she knew why law enforcement had asked her to see me. And at that point she did start talking to me about her relationship with her stepfather and the behavior that her stepfather had done with her, which had led her to talk to her school counselor and inform law enforcement and then present to me.

. . . .

Q    So what did she tell you?

A    She told me that her stepdad, when her mom is at work, will take her to his room. This apparently has been ongoing since she was nine, she told me. She was able to tell me the age at which it started. So, approximately two years.

. . . .

Q    And what did she tell you happened in his room?

A    She stated to me that he would take off first her clothes and then his clothes. And then he would place his private parts—those were her exact words—on her private parts.

I did ask her to explain this a little bit more, being 11, she wasn't familiar with typical anatomy or names of anatomy. So I did explain to her the difference between a vagina and a rectum, because I was trying to ascertain, before I did the physical exam, what areas in which injury might have occurred.

> And so what she told me was that—what she described to me was that he would attempt to place his penis in both her vagina and rectum; but she said that she was too small.
>
> And what I understood from her was that there was more touching and not actual penetration, although perhaps some initially attempted penetration.
>
> Q   Did she talk about after that what did she—did you ask her about her putting her mouth or his put [sic] his mouth anywhere?
>
> A   I did ask her that. I asked her if her stepfather had ever had her place her mouth on, and I referred it to her in her terminology, his private. She shook her head yes. She didn't make a verbal reply, but she did shake her head yes.

RP at 145-49. The prosecutor asked Dr. Phipps if she came to an opinion regarding the physical state of T.O.'s body following her examination. Dr. Phipps responded:

> I didn't find any abnormalities, physically, except for the psychiatric exam. But due to the fact that it was not an acute exam and healing can occur, that was not surprising to me; nor did it negate the history for me.
>
> But I did think that she was a child who would benefit from having some counseling as well, because she was clearly, her affect and her mood demonstrated an abnormality that I would have considered consistent with some kind of trauma.

RP at 154. The prosecutor questioned Dr. Phipps "because you don't find any kind of physical manifestations in her body, does that mean that no sexual abuse occurred?"

RP at 154. Dr. Phipps answered:

> No, it doesn't. The body is incredible for healing. And I would relate this back to the example that I gave between an acute and a non-acute visit.

6

> If you're walking down the street and you twist your knee. You might have some swelling initially. If you go immediately for something, that might be perceived. Whereas if you wait three or four days, the swelling may have resolved, there may not be a physical finding yet the injury still occurred, so the body can heal.

RP at 154. Dr. Phipps stated that she would not expect to see tears or lesions in the vaginal area if a penis rubbed against the area, rather than entered the vagina. Finally, Dr. Phipps declared that "[i]t's more typical not to find findings than to find findings" in sexual assault examinations. RP at 161.[2]

Detective Jose Santoy with the Kennewick Police Department also testified. He testified he observed the forensic interview of the girls conducted by Ms. Murstig from a separate room behind two-way glass. Based on the interviews, he applied for separate search warrants for two locations. He described finding the items T.O. described during her forensic interview, including grapeseed and coconut oil, a package of baby wipes, a

---

[2] Mr. Luna Huezo claims that Dr. Phipps, in her testimony, said he penetrated T.O.'s rectum. The record does not support this claim.

During cross-examination, Mr. Luna Huezo sought to establish inconsistency between Dr. Phipps's testimony about *attempted* vaginal and rectal penetration and her report, which indicated that the penetration was actual. On cross, she admitted that her report did not say anything about attempted. On redirect, Dr. Phipps clarified that T.O. said Mr. Luna Huezo placed his penis in her rectum and vagina, but then added, "she was too small, they didn't fit. So it sounded more like an attempt than an actual insertion." RP at 161.

backpack containing condoms, and a backpack containing duct tape and zip ties.  After

the search, he set up the appointment for Dr. Phipps to examine T.O.

Mr. Luna Huezo testified in his defense.  He denied any inappropriate sexual

contact with either T.O. or B.O.  After both parties rested, the State dismissed count 4,

a child molestation charge involving B.O.

*Verdict and sentence*

The jury found Mr. Luna Huezo guilty on all remaining counts and found the

presence of the aggravating factors.  The court imposed an indeterminant sentence of

300 months to life and ordered Mr. Luna Huezo to comply with several conditions of

community custody, including the following that he challenges in this petition:

> 5.  Inform the supervising CCO[3] and sexual deviancy treatment provider of any dating relationship.  Disclose sex offender status prior to any sexual contact.  Sexual contact in a relationship is prohibited until the treatment provider approves of such.
>     . . . .
> 9.  Do not enter sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material.
> 10.  Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.
>     . . . .

---

[3] Community corrections officer.

12.  Be available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or the chemical dependency treatment provider.

. . . .

15.  [  x  ] Abide by a curfew of 10 pm-5 am unless directed otherwise.  Remain at registered address or address previously approved by CCO during these hours.

16.  [  x  ] Have no direct and/or indirect contact with minors.

. . . .

23.  [  x  ] No internet access or use, including email, without the prior approval of the supervising CCO.

24.  [  x  ] No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches).  The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

Pers. Restraint Pet. (PRP), Attach. A, App. H.

Mr. Luna Huezo filed a direct appeal, and we affirmed his convictions.  His judgment and sentence became final when we issued our mandate on July 13, 2021.  RCW 10.73.090(3)(b).  He filed this timely petition on January 12, 2022.

ANALYSIS

A.     DR. PHIPPS'S TESTIMONY

Mr. Luna Huezo advances two arguments why we should grant him a new trial, both of which focus on Dr. Phipps's testimony: (1) She gave an improper opinion that

9

violated his Sixth Amendment to the United States Constitution right to a jury trial, and

(2) the trial court erred by admitting hearsay of what T.O. told Dr. Phipps.[4]

The first challenge is constitutionally based, whereas the second is not.  We begin

by noting the differing standards of review for these two challenges.

*Standard of review*

Collateral relief from a conviction is an extraordinary remedy that seeks to disturb

a final judgment; therefore, a PRP must meet a high standard to obtain relief.  *In re Pers.*

*Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). Typically, this means a

petitioner must show either that they were actually and substantially prejudiced by

constitutional error or that their trial suffered from a fundamental defect of a

nonconstitutional nature that inherently resulted in a complete miscarriage of justice.  *In*

*re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007).  The petitioner

bears the burden of demonstrating prejudice—that more likely

---

[4] In his petition, Mr. Luna Huezo's second argument appears to be a constitutionally based confrontation clause challenge under *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  He describes the hearsay as "testimonial" and cites cases that apply *Crawford*.  PRP at 10-13.  In its response, the State points out that T.O. testified at trial and was subject to cross-examination, so there was no *Crawford* violation.  In his reply, Mr. Luna Huezo adamantly denies he asserted a *Crawford* challenge.  We therefore construe his challenge as one limited to the rules of evidence.

than not they were prejudiced by the error. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013). In conducting this inquiry, the court considers the totality of the circumstances. *Id*.

      1.     *Claim of constitutionally impermissible opinion testimony*

Mr. Luna Huezo contends that Dr. Phipps's testimony was constitutionally impermissible because, by inference, she testified he was guilty and she believed T.O.

Criminal defendants have a constitutionally guaranteed right to a trial by jury. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 21, 22. "No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Such testimony is unfairly prejudicial to the defendant because it invades the province of the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Because impermissible opinion testimony invades the province of the jury, it is a constitutional error. *Id*.

It is also improper for a witness to offer testimony concerning the credibility of another witness. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (plurality opinion). Such testimony is unfairly prejudicial and also invades the exclusive province of the jury. *Id*. But the fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper

11

opinion on guilt. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578-79, 854 P.2d 658

(1993).

Here, Dr. Phipps testified about the sexual assaults T.O. reported to her and

T.O.'s demeanor while reporting the assaults:

> It was not the affect that you would typically expect of a 11 year-old in the
> office. She was withdrawn. She was tearful. She was very pleasant and
> cooperative [at times], so she was not [withdrawn and tearful] during the
> entire examination. She had times in which she would answer questions
> and smile and be engaged and be exactly what you would anticipate from a
> 11 year-old.
> . . . .
> . . . I did think that she was a child who would benefit from having
> some counseling as well, because she was clearly, her affect and her mood
> demonstrated an abnormality that I could have considered consistent with
> some sort of trauma.

RP at 153-54.

We do not view Dr. Phipps's opinion as a direct or indirect opinion of Mr. Luna

Huezo's guilt. Dr. Phipps's opinion that T.O.'s demeanor reflected "an abnormality that

[she] could have considered consistent with some sort of trauma" was too indefinite to be

constitutionally impermissible. Although the jury could have inferred that T.O.'s trauma

was caused by sexual abuse, the indefinite nature of Dr. Phipps's testimony permitted the

jury to find otherwise. But even were we to conclude that Dr. Phipps's indefinite opinion

amounted to an improper opinion of guilt, Mr. Luna Huezo's claim would be subject to harmless error analysis and he would be unable show actual and substantial prejudice.

"If a constitutional error is subject to harmless error analysis on direct appeal, that same error alleged in a PRP must be shown to have caused actual and substantial prejudice in order for the petitioner to obtain relief." *Brockie*, 178 Wn.2d at 539. In conducting this inquiry, this court considers the totality of the circumstances. *Id.* Considering the totality of circumstances, the evidence of guilt presented in Mr. Luna Huezo's trial was sufficiently strong that we are persuaded he would have been convicted without Dr. Phipps's indefinite opinion.

T.O. testified at trial and the jury was able to view her demeanor as she reported the numerous instances of sexual abuse and form its own determination of credibility. Moreover, T.O. described to the jury how Mr. Luna Huezo had once used duct tape to tie her hands together, that he kept condoms in a gray and blue backpack in his bathroom, that he rubbed lubricant on his penis, and that he cleaned himself afterward with baby wipes. Detective Santoy testified that he found all of these items during his search. T.O.'s demeanor while testifying and the corroboration of her detailed testimony likely resonated much more with the jury than Dr. Phipps's indefinite opinion.

2. *Claim of evidentiary error*

Mr. Luna Huezo contends T.O.'s statements through Dr. Phipps's testimony should not have been admitted because they were hearsay and did not fall under the exception for statements made for the purpose of medical diagnosis or treatment. We conclude the trial court did not abuse its discretion when it admitted those statements.

We review evidentiary rulings for abuse of discretion. *State v. Burke*, 196 Wn.2d 712, 740, 478 P.3d 1096, *cert. denied*, ___ U.S. ___, 142 S. Ct. 182, 211 L. Ed. 2d 74 (2021). "'We will not reverse the trial court's decision unless we believe that no reasonable judge would have made the same ruling.'" *Id.* at 740-41 (internal quotation marks omitted) (quoting *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007)).

Hearsay evidence is generally inadmissible. ER 802. But ER 803(a) contains various exceptions to this rule, based on the premise that evidence within those exceptions is inherently reliable. One exception to the hearsay rule is statements made for purposes of medical treatment. ER 803(a)(4). The exception encompasses diagnosis or treatment of psychological conditions. *See, e.g.*, *State v. Woods*, 143 Wn.2d 561, 602, 23 P.3d 1046 (2001). The scope of this exception encompasses "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause

14

or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

ER 803(a)(4).

"For the statement to be 'reasonably pertinent' to medical diagnosis or treatment under ER 803(a)(4), the declarant's motive in making the statement must be to promote treatment and the medical professional must have relied on it for the purposes of treatment." *Burke*, 196 Wn.2d at 740. "Statements attributing fault are generally inadmissible under this exception, but statements 'disclosing the identity of a closely-related perpetrator' may be reasonably pertinent to treatment in certain situations like domestic violence or sexual abuse 'because part of reasonable treatment and therapy is to prevent recurrence and future injury.'" *Id.* (quoting *State v. Williams*, 137 Wn. App. 736, 746, 154 P.3d 322 (2007)).

As in *Burke*, we conclude the trial court did not abuse its discretion in admitting the sexual assault victim's statements through the medical provider because those statements were reasonably pertinent to medical diagnosis or treatment. That is, even though the statements were made to a medical professional assisting a police investigation, it is reasonable to believe that T.O.'s motive was to promote treatment and that Dr. Phipps relied on those statements for the purposes of treatment. Specifically, T.O. likely made those statements for treatment, which includes preventing recurrence

15

and future injury. And Dr. Phipps relied on those statements for treatment, i.e., assisting law enforcement in preventing Mr. Luna Huezo from reinjuring T.O., recommending counseling for T.O. to address her psychological trauma, and directing T.O. to her laboratory for tests to determine the presence of sexually transmitted diseases.

Were these issues presented to us on direct review, we would have affirmed the trial court because it cannot be said that no reasonable judge would have made the same rulings. Given the heightened standard of review applicable here, we deny Mr. Luna Huezo's evidentiary challenge because it cannot be said that the judge's rulings constituted a fundamental defect that inherently resulted in a complete miscarriage of justice.

B.     COMMUNITY CUSTODY CONDITIONS

Mr. Luna Huezo challenges eight community custody conditions imposed by the sentencing court. We address each after we set forth the relevant standards of review.

*Standards of review*

*For nonconstitutional challenges*

Mr. Luna Huezo challenges some conditions as not being authorized by law. This type of challenge is a nonconstitutional challenge.

The legislature has authorized trial courts to impose mandatory, waivable, discretionary, and special conditions. RCW 9.94A.703(1)-(4). Discretionary conditions include refraining from direct or indirect contact with the victim or a specified class of individuals, performing affirmative conduct reasonably related to the circumstance of the offense, and complying with crime-related prohibitions. RCW 9.94A.703(3)(b), (d), (f).

Crime-related prohibitions are "order[s] of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A court does not abuse its discretion if a "reasonable relationship" exists between the crime of conviction and the community custody condition. *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." *Id.* at 657. In addition, a sentencing court can also require an offender to perform "affirmative acts necessary to monitor compliance" with a community custody condition. RCW 9.94A.030(10).

To receive collateral review on a nonconstitutional ground, the petitioner must establish that the claimed error constitutes a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 818,

17

272 P.3d 209 (2012); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002).

*For constitutional challenges*

Mr. Luna Huezo challenges other conditions as being unconstitutional. "Limitations upon fundamental rights are permissible, provided they are imposed sensitively." *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Conditions that interfere with the First Amendment rights of speech and association "must be reasonably necessary to accomplish the essential needs of the state and public order." *State v. Padilla*, 190 Wn.2d 672, 684, 416 P.3d 712 (2018).

A condition is unconstitutionally overbroad if it is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well. *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 67, 469 P.3d 322 (2020).

A condition is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. If a person of ordinary intelligence can understand what the law proscribes, it is not vague even if there are possible areas of

18

disagreement.  *State v. Bahl*, 164 Wn.2d 739, 754, 193 P.3d 678 (2008).  To receive collateral review on a constitutional ground, the petitioner must establish that the claimed error resulted in actual and substantial prejudice.  *Elmore*, 162 Wn.2d at 251.

With these standards in mind, we now review the challenged conditions.

CONDITION 5:  DISCLOSURE OF RELATIONSHIPS AND SEX OFFENDER STATUS

Mr. Luna Huezo contends condition 5 is not crime related and portions of the condition are overbroad and infringe on his First Amendment rights.  We address his arguments separately.

*Crime relatedness*

Mr. Luna Huezo contends each sentence of condition 5 is not crime related. We disagree.

In *Sickels*, we interpreted the exact condition at issue here.  *Sickels*, 14 Wn. App. 2d at 60.  We noted the condition's first two sentences were not imposed under RCW 9.94A.703(3)(f), which requires "crime-relatedness."  *Id*.  Instead, the condition's first two sentences are affirmative conduct requirements governed by RCW 9.94A.703(3)(d) and need only to be "reasonably related to the circumstances of the offense."  *Id*.

19

As in *Sickels*, the first two sentences of condition 5 challenged here are reasonably related to the circumstance of the offenses and safety of the community. *Id*. Because Mr. Luna Huezo raped and molested his stepdaughters, these conditions protect individuals whom he dates or may have a sexual relationship with by providing them with knowledge of the potential risk he presents to minors. *Id*. at 61. They make it possible for his CCO and treatment provider to take whatever step they might deem appropriate to protect anyone who may enter a dating or sexual relationship with him. *Id*.

The third sentence of condition 5 is a prohibition of conduct and must be crime related under RCW 9.94A.703(3)(f). *Id*. When a condition prohibiting sexual contact in a relationship without prior approval is imposed on a sex offender, along with the requirement for early evaluation, the condition is crime related. *Id*. at 62. Similar to our reasoning in *Sickels*, we conclude the condition is crime related in this case.

Like the offender in *Sickels*, Mr. Luna Huezo's judgment and sentence requires him to obtain a sexual deviancy evaluation within 30 days of his release and to follow any recommended treatment. *Id*. Reasonably read in conjunction with the requirement Mr. Luna Huezo obtain sexual deviancy treatment, the third sentence of condition 5 does not require Mr. Luna Huezo to get contact-by-contact approval for sexual contact for life. "Reasonably read, it requires that he not have sexual contact 'until' his treatment provider

is satisfied that sexual contact does not put others at risk.  It is not a total ban on protected activity and can be challenged as applied in the event the treatment provider's approval is exercised unreasonably."  *Id*. at 62-63.

We conclude the first two sentences of condition 5 are reasonably related to the circumstances of the offenses, and the third sentence is crime related.

*Overbreadth*

Mr. Luna Huezo also argues the first and third sentences of condition 5 are overbroad.  We disagree.

With regard to the first sentence, Mr. Luna Huezo argues the condition is overbroad because it infringes on his constitutional right to freedom of association.  We disagree.

The First Amendment protects freedom of association.  U.S. CONST. amend. I; *State v. Moultrie*, 143 Wn. App. 387, 399, 177 P.3d 776 (2008).  While in community custody, an offender's constitutional rights are subject to infringement as authorized by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.  *Id.* at 396.  This includes restrictions on contact with the victim of the crime or a specific class of individuals.  RCW 9.94A.703(3)(b).  A court may restrict an offender's freedom of association as a condition of sentencing if reasonably necessary to accomplish essential

needs of the state and public order. *Riley*, 121 Wn.2d at 37-38. Such limitations are permissible if they are sensitively imposed. *Id*. at 37.

Mr. Luna Huezo relies on *Moultrie* for the proposition that "courts have also recognized that it would not be reasonable to order a sex offender to have no contact with a class of individuals who do not share a relationship to the offender's crime." 143 Wn. App. at 399. But the first sentence of condition 5 here does not prohibit contact with any particular class of individuals. Instead, it expressly allows Mr. Luna Huezo to engage in dating relationships but requires he inform his sexual deviancy providers in order to reduce the possibility of reoffending. And, as discussed above, the dating community custody conditions are reasonably related to the circumstances of his crimes and protect the individuals he might seek to date or engage with in sexual activity. The dating limitations are sensitively imposed to protect others and minimize the likelihood that he will commit similar sex offenses. Mr. Luna Huezo fails to show the first sentence of condition 5 is overbroad or violates his freedom of association.

We are also not persuaded the third sentence of condition 5 is overbroad. A community custody condition is not impermissibly overbroad if it is crime related. *State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020); *see State v. McKee*, 141 Wn. App. 22, 37, 167 P.3d 575 (2007) ("[A]n offender's constitutional rights during community

placement are subject to SRA-authorized infringements, including crime-related prohibitions."); *see also State v. Bahl*, 137 Wn. App. 709, 714-15, 159 P.3d 416 (2007), *overruled on other grounds*, 164 Wn.2d 739. Because the third sentence of condition 5 is crime related, as discussed above, we reject Mr. Luna Huezo's overbreadth challenge.

*Compelled speech*

Mr. Luna Huezo also challenges the second sentence of condition 5, requiring him to disclose his sex offender status prior to any sexual contact, as an unconstitutional compulsion of speech. We disagree.

The right to freedom of speech necessarily includes the freedom to refrain from speech. U.S. CONST. amend. I, XIV; CONST. art. I, § 5; *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). Community custody conditions that require an offender to speak implicate the First Amendment through the compelled speech doctrine. *State v. K.H.-H.*, 185 Wn.2d 745, 748-49, 374 P.3d 1141 (2016). "The compelled speech doctrine generally dictates that the State cannot force individuals to deliver messages that they do not wish to make." *Id.* at 749. A community custody condition that limits a fundamental right is permissible, provided it is imposed sensitively. *Bahl*, 164 Wn.2d at 757. First Amendment rights may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. *Id.*

No published Washington case addresses whether a condition requiring an offender to disclose his sex offender status prior to any sexual contact constitutes unconstitutionally compelled speech. However, three unpublished cases out of Division One of this court uphold similar conditions and one strikes down a similar condition.

In *State v. Stark*, the court upheld an identical condition. No. 76676-7-I, slip op. at 10 (Wash. Ct. App. Oct. 15, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/766767.pdf. There, the offender was convicted of molestation and incest against the minor daughter of his wife. *Id*. at 1. He challenged the condition as an unconstitutional compulsion of speech. *Id*. at 5. The court upheld the provision, explaining:

> Although the challenged condition implicates [the offender's] First Amendment rights, it is sensitively imposed and reasonably necessary. [The offender] was convicted of sex crimes against the minor child of a woman with whom he was having sexual contact. Requiring [him] to disclose his sex offender status before commencing a sexual relationship is reasonably necessary to protect the public.

*Id*. at 10.

Similarly, in *State v. Gray*, an offender convicted of raping his minor daughter challenged the same provision, in part arguing it violated his First Amendment association rights. No. 77860-9-I, slip op. at 8 (Wash. Ct. App. Apr. 29, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/778609.pdf. The court upheld the provision. *Id*. Without explicitly addressing the First Amendment argument, the

24

court reasoned that because the offender raped his daughter, the child of a woman who he had a sexual relationship with, "[r]equiring him to disclose his sex offender status before any sexual contact with a dating partner relates reasonably to protecting dating partners and their children." *Id.*

Likewise, the court upheld an identical condition in *State v. Matthie*, reasoning:

It provides notice to potential romantic partners who do not have children of their own but may have relationships that would provide [the offender] access to minors. For example, the disclosure requirement provides notice to partners who may be responsible for the safety of live-in or visiting minors and minors who are present in the home but not remaining overnight. The condition is also the only affirmative requirement that [the offender] put potential romantic partners on notice that they may need to take steps to protect minors in their care.

No. 79846-4-I, slip op. at 4-5 (Wash. Ct. App. June 8, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/798464.pdf. The court concluded the condition was "reasonably necessary to accomplish the legitimate state interest of preventing sex offenses against minors, and was sensitively imposed." *Id*. at 5.

However, in *State v. Mecham*, the court struck down an identical condition as unconstitutionally compelled speech where the crimes were committed against children, not adults. No. 79008-1-I, slip op. at 14-15 (Wash. Ct. App. Mar. 2, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/790081.pdf.

25

We are persuaded by the reasoning in *Stark* and *Matthie* and apply it here. Mr. Luna Huezo committed these crimes against his wife's minor daughters. The condition is reasonably necessary to protect minors, an essential need of the State and public order, in particular minors related to or in the care of a person who Mr. Luna Huezo may have a dating or sexual relationship in the future. The condition is sensitively imposed because it is the only affirmative requirement that Mr. Luna Huezo put any person he dates on notice that they may need to take steps to protect minors in their care. This challenge fails. All considered, we affirm condition 5 in its entirety.

CONDITION 9: SEX RELATED BUSINESSES

Mr. Luna Huezo contends condition 9 is not crime related and is overbroad. We disagree.

*Crime relatedness*

In *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 686, 425 P.3d 847 (2018), our Supreme Court upheld a nearly identical condition as crime related in a case where the offender was convicted of child molestation. There, the offender argued the condition was not crime related because there was no evidence that sex businesses played any role in the crimes. *Id.* The Supreme Court acknowledged that although there was no evidence that sex businesses played a role in the crimes,

26

> this condition has more to do with [the offender's] inability to control her urges and impulsivities than it does with the specific facts of her crimes. . . . Here, it is unlikely that [the offender] will meet a minor, and potential victim, in a "sex-related business." But, it is reasonable to conclude that [she] will struggle to rehabilitate from her sexual deviance so long as she frequents "sex-related businesses." [Her] crimes have as much to do with her inability to control her sexual urges as they do with her access to minors.

*Id*. at 687. Similarly, Mr. Luna Huezo's rape and molestation of his stepdaughters demonstrates that he cannot control his sexual urges. For the same reasons explained by the *Hai Minh Nguyen* court above, we conclude condition 9 is crime related here.

*Overbreadth*

Mr. Luna Huezo also challenges this condition as overbroad. But again, a community custody condition is not impermissibly overbroad if it is crime related. *Lee*, 12 Wn. App. 2d at 401; *McKee*, 141 Wn. App. at 37; *Bahl*, 137 Wn. App. at 714-15. Because we conclude condition 9 is crime related, we reject Mr. Luna Huezo's overbreadth challenge.

CONDITION 10: SEXUALLY EXPLICIT MATERIAL

Mr. Luna Huezo contends the limitation on accessing sexually explicit material is not crime related and is overbroad. We agree, in part. A portion of the condition is overbroad.

27

*Crime relatedness*

Mr. Luna Huezo argues condition 10 is not crime related because there is no evidence pornography contributed to his offense. We disagree.

Mr. Luna Huezo cites *Padilla* as support for his argument. 190 Wn.2d at 683. But, the facts here are unlike *Padilla* where the State conceded the record did not show a connection between sexually explicit material and the defendant's offense pattern. *Id*. The State makes no such concession here. Contrary to Mr. Luna Huezo's assertion, sexually explicit materials were a part of his crimes. T.O. told an investigator Mr. Luna Huezo would show her pornographic movies on his cellphone and ask her to smile like the women in those movies. T.O. acknowledged Mr. Luna Huezo showed her videos of a girl and boy touching each other while in his room and his car. Sexually explicit videos were therefore part of the circumstances of Mr. Luna Huezo's crimes. Condition 10 is crime related.

In *Hai Minh Nguyen*, our Supreme Court also held that a prohibition on sexually explicit materials in general is related to the crimes of child rape and molestation. 191 Wn.2d at 686. The court reasoned that by committing sex crimes, the defendant "established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited

28

from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Id*. The same reasoning applies here. By raping and molesting his stepdaughters, Mr. Luna Huezo demonstrated he cannot suppress his sexual urges. The prohibition is therefore crime related.

Mr. Luna Huezo argues that *Hai Minh Nguyen* does not control here because it does not address First Amendment issues. While the *Hai Minh Nguyen* court did not address First Amendment issues, as discussed above, it did address the issue of crime relatedness with regard to a similar condition. 191 Wn.2d at 686. That crime-related analysis remains applicable to Mr. Luna Huezo's argument that condition 10 is not crime related.

### *Overbreadth and vagueness*

Mr. Luna Huezo also contends condition 10 is overbroad. In his supplemental brief, he specifies the last clause of condition 10 is overbroad. The State concedes the last clause should be struck. We accept the State's concession and conclude the last clause is overbroad and vague.

Mr. Luna Huezo relies on *Sickels* to support his argument. 14 Wn. App. 2d at 64. In *Sickels*, the offender challenged an identical condition. *Id*. Analyzing the condition under a vagueness rubric, we upheld the condition with the exception of the last clause.

29

*Id.* at 65. The last clause prohibited the offender from possessing, using, accessing, or viewing "any material depicting any person engaged in *sexually explicit conduct as defined by RCW 9.68A.011(4)* unless given prior approval by your sexual deviancy provider." *Id.* at 60 (emphasis added). RCW 9.68A.011(4) defines "sexually explicit conduct" as "*actual or simulated*" types of conduct. RCW 9.68A.011(4)(a)-(g) (emphasis added). We held the clause was unconstitutionally vague because, "[g]iven the purpose of the chapter, 'sexually explicit conduct' is broad, and includes conduct such as simulated sexual intercourse that—engaged in by adults—appears in mainstream media." *Sickels*, 14 Wn. App. 2d at 65-66.

Here, condition 10 contains the identical last clause with reference to RCW 9.68A.011(4). Like in *Sickels*, we conclude the last clause of condition 10 is unconstitutionally vague because it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. We also conclude that the last clause is unconstitutionally overbroad because "sexually explicit conduct" as defined to mean "actual or simulated" conduct under RCW 9.68A.011(4) "is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *Sickels*, 14 Wn. App. 2d at 67. We direct the sentencing court

30

to strike or modify the last clause of condition 10 in accordance with this opinion and

*Sickels*.

CONDITION 12: URINALYSIS/ BREATH ANALYSIS

Mr. Luna Huezo contends condition 12 is not crime related or narrowly tailored,

and the court exceeded its statutory authority when it imposed the condition. The State

concedes and requests we strike the entire condition. We nevertheless conclude a portion

of the condition is valid.

We review whether a sentencing court had statutory authority to impose a

sentencing condition de novo. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704

(2014).

First, the court had statutory authority to impose the portion of the condition that

requires random urinalysis testing because it separately imposed a waivable condition

requiring Mr. Luna Huezo to refrain from possessing or consuming controlled substances

except pursuant to lawfully issued prescriptions under RCW 9.94A.703(2)(c). Mr. Luna

Huezo does not challenge that waivable condition in his petition.

The Department of Corrections may require "affirmative acts necessary to monitor

compliance with the order of a court" such as random urinalysis or breath analysis.

RCW 9.94A.030(10). Random urinalysis testing is therefore a statutorily valid condition

to monitor his compliance with the prohibition on illegal controlled substance use. *See State v. Vant*, 145 Wn. App. 592, 604, 186 P.3d 1149 (2008). The court did not exceed its statutory authority when it required random urinalysis testing.

However, the portion of the condition that requires Mr. Luna Huezo to submit to breath analysis is not narrowly tailored.

Mr. Luna Huezo relies on *State v. Olsen*, 189 Wn.2d 118, 399 P.3d 1141 (2017), to support his argument the condition is not narrowly tailored. In *Olsen*, our Supreme Court considered whether a requirement that driving under the influence probationers submit to random urinalysis testing violated their privacy interests under article I, section 7 of our state constitution. *Id.* at 120. It held that the urinalysis implicated a probationer's reduced privacy interest but did not violate article I, section 7, because the random testing was conducted with authority of law. *Id*. at 126. But, *Olsen* does not answer the question of whether random breath analysis testing is constitutionally permissible for a sex offense probationer whose crime of conviction did not involve alcohol use. *Olsen* instead sets forth a framework for analyzing whether such a condition is valid: whether the condition is narrowly tailored to achieve a compelling state interest. *Id*. at 128.

The condition's requirement that Mr. Luna Huezo submit to breath analysis is not narrowly tailored. The sentencing court has discretion to order an offender to refrain

32

from consuming alcohol.  Former RCW 9.94A.703(3)(e) (2009).  This condition may be imposed even if alcohol played no role in the underlying offense.  *State v. Jones*, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003).  But the court here did not impose a condition that would prohibit Mr. Luna Huezo from purchasing, possessing, or consuming alcohol.  Nor did it impose any conditions related to alcohol treatment.  Further, Mr. Luna Huezo was not convicted of an alcohol offense, such as the driving under the influence in *Olsen*.  Thus, the requirement that he submit to breath analysis is not narrowly tailored.

Further, because this is an affirmative act requirement, under RCW 9.94A.703(3)(d), the condition would need to be reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community.  The State does not argue that the condition should be upheld for any of these reasons.  Instead, the State concedes the whole condition should be struck.  But, as discussed above, the condition's urinalysis requirements are valid.  Thus, we direct the sentencing court to strike the condition's reference to breath analysis.

CONDITION 15:  CURFEW

Mr. Luna Huezo argues condition 15 is not crime related.  We agree.

As an initial matter, the State contends this condition is authorized under RCW 9.94A.703(3)(d), which allows the court to order an offender to perform affirmative

conduct reasonably related to the offender's risk of reoffending or the safety of the community. The State argues "[s]trip clubs and adult bookstores are known to stay open in late hours" and the condition is necessary to ensure Mr. Luna Huezo "not approach runaway minor girls at night." Resp. to PRP at 28. We are not persuaded by these arguments.

The curfew condition is not a condition to "otherwise perform affirmative conduct" under RCW 9.94A.703(3)(d). Rather, it is a "crime-related prohibition" under RCW 9.94A.703(3)(f). The condition prohibits Mr. Luna Huezo from going out between 10:00 p.m. through 5:00 a.m. and requires him to remain at a registered address between these hours. This is a prohibition of conduct, not a command of affirmative conduct. This is evidenced by the condition being listed under the "Additional Crime-Related Prohibitions" heading on the list of Mr. Luna Huezo's community custody conditions, appended to his judgment and sentence. PRP, App. H at 2.

We will strike a crime-related condition it if there is no evidence in the record linking the circumstance of the crime to the condition. *Irwin*, 191 Wn. App. at 656-57. Here, there is no evidence linking Mr. Luna Huezo's offenses to a specific time, let alone any time between the hours of 10:00 p.m. and 5:00 a.m. Further, the State's arguments for the conditions are weak considering there is no evidence Mr. Luna Huezo's crimes

involved strip clubs or adult bookstores at late hours, nor do the crimes involve minor runaway girls at night. Condition 15 must be struck because it is not crime related.

CONDITION 16: CONTACT WITH MINORS

Mr. Luna Huezo next challenges condition 16 because it bans all contact with minors, including his own biological children. The State concedes error. We accept the State's concession.

Natural parents have a fundamental right in the "care, custody, and management" of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Conditions that interfere with fundamental rights must be "'sensitively imposed'" so that they are "'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

Mr. Luna Huezo had three natural children at the time of sentencing. The State concedes the condition should be amended to allow Mr. Luna Huezo access to his natural children. We accept this concession and remand to the sentencing court to amend condition 16 in accordance with this opinion.

CONDITIONS 23 AND 24: NO INTERNET, COMPUTER, OR PHONE ACCESS

Mr. Luna Huezo contends conditions 23 and 24 are not crime related and are overbroad and vague. The State concedes the conditions should be rewritten and proposes amendments. We conclude both conditions are overbroad and reject the State's proposed amendments.

*Crime relatedness*

Mr. Luna Huezo argues these conditions are not crime related, asserting "the record does not support, any connection between [his] alleged offenses and Internet use." PRP at 38. We are not persuaded by this argument. As discussed, Mr. Luna Huezo showed pornography on his phone to one of his victims. Accordingly, a prohibition on Mr. Luna Huezo using his phone "directly relates to the circumstances" of his crimes. RCW 9.94A.030(10). And a sentencing condition may prohibit a defendant's access to a means or medium through which he committed a crime. *Rainey*, 168 Wn.2d at 380.

Mr. Luna Huezo argues that "[t]he State fails to explain how legal pornography on a phone involves Internet, as there's nothing in [the] record of how it got there . . . ." Reply to State's Resp. to PRP at 20-21. However, as the State argues, it is reasonable to conclude the Mr. Luna Huezo utilized the Internet to access, download, or to otherwise facilitate playing the pornography on his phone. Thus, a prohibition of Internet use or

36

access is related to the circumstances of Mr. Luna Huezo's crimes. We conclude

conditions 23 and 24 are both crime related.

*Overbreadth and vagueness*

Mr. Luna Huezo argues conditions 23 and 24 are overbroad and condition 23 is

vague. The State concedes condition 23 should be rewritten in accordance with our

decision in *Sickels*. We agree with Mr. Luna Huezo and accept the State's concession.

Restrictions on Internet access implicate the First Amendment. *Packingham v.*

*North Carolina*, 582 U.S. 98, 104, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017). We have

held that blanket prohibitions on using the Internet or Internet capable devices are

impermissibly broad, even where the defendant used the Internet to commit a sex offense.

*Sickels*, 14 Wn. App. 2d at 73.

In *Sickels*, we interpreted two conditions with identical language to conditions 23

and 24 challenged here. 14 Wn. App. 2d at 71-75. We held the conditions' "limitation of

Internet use to employment purposes is overly broad" and the conditions' provision for

"'[n]o Internet access or use, including email' is even more objectionable." *Id*. at 73.

We also held the provision delegating authority to the offender's supervising CCO to

approve Internet access was overbroad. *Id*. We noted the provision for random searches

to monitor compliance were reasonable as long as the restrictions on Internet and

computer use are revised. *Id*. For these same reasons, we conclude conditions 23 and 24 here are overbroad.

Condition 23's provision prohibiting Internet access without CCO approval is also vague because it "does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. We remand for the sentencing court to strike these conditions and impose more narrowly tailored conditions.

The State's proposed modification of condition 23 would not pass constitutional muster. The State proposes that condition 23 be modified to read:

> "The defendant shall not access the internet to view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW [9].68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider."

Suppl. Br. of Resp't at 22. However, as discussed above with regard to condition 10, the last clause of this proposed condition, "sexually explicit conduct as defined by RCW 9.68A.011(4)," is unconstitutionally vague and overbroad. *Sickels*, 14 Wn. App. 2d at 65-66. Thus, the State's proposed amendment to condition 23 is not constitutionally sufficient.

38

The State's proposed modification to condition 24 does not address the problematic portions of the condition. The State's proposal amends the last line of condition 24 to read (proposed text in italics):

> "24. No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone, or computer-related device to which the defendant has access to monitor compliance with this condition *based on the CCO's reasonable suspicion that the defendant has violated a requirement or condition of the Judgment and Sentence.*"

Resp. to PRP at 32-33.

We acknowledge the State's proposed text properly mirrors RCW 9.94A.631(1), which allows a CCO to search an offender "[i]f there is reasonable cause to believe that [the] offender has violated a condition." *See State v. Massey*, 81 Wn. App. 198, 201, 913 P.2d 424 (1996) ("While the failure to include the language does not affect the order's constitutionality, we urge sentencing courts to state explicitly in the order that searches of parolees and probationers must be based on reasonable suspicion."). However, the problematic portions of condition 24 include the total ban on computers and phones, and the limitation of Internet use to only employment purposes. *Sickels*, 14 Wn. App. 2d at 73. We remand for the court to impose more narrowly tailored conditions.

CONCLUSION

To the extent Mr. Luna Huezo seeks a new trial, we deny his personal restraint petition. But to the extent he seeks relief from some of his community custody conditions, we partly grant his petition.

We reverse in part and remand with directions for the trial court to:

- Modify community custody condition 10 to exclude simulated sexually explicit conduct as defined by RCW 9.68A.011(4);

- Modify community custody condition 12 by striking the reference to breath analysis;

- Strike community custody condition 15;

- Modify community custody condition 16 to allow Mr. Luna Huezo to access his natural children; and

- Strike community custody conditions 23 and 24 and consider whether to impose conditions that more narrowly restrict computer, phone, and Internet use.

No. 38697-0-III
*In re Pers. Restraint of Huezo*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.

41